UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LM GENERAL INSURANCE COMPANY, | |
| Plaintiff, | CIVIL ACTION NO. 3:23-cv-00827 |
| v. | (SAPORITO, C.M.J.) |
| ROBERT HARTENFELS, individually and as administrator of the estates of Hannah Hartenfels and Debbie Boyd, | |
| Defendant. | |

## MEMORANDUM

This matter comes before the court on a Rule 42(b) motion to bifurcate by the plaintiff, LM General Insurance Company ("LM General"). Doc. 9. The motion is fully briefed and ripe for decision. Doc. 10; Doc. 14.

This is a diversity action between an insurer, plaintiff LM General, and its policyholder, defendant Robert Hartenfels. LM General issued an automobile insurance policy to Hartenfels, Policy No. AOS-281-558630-40 1 6 (the "Policy"), for a policy period beginning August 4, 2021, and ending August 4, 2022. Robert Hartenfels was the only named insured on the Policy, and a 2017 Toyota Camry was the only covered vehicle

listed on the declarations page. The Policy, however, provided underinsured motorist ("UIM") coverage not only for the named insured, but the named insured's spouse or family members, provided they resided in the same household as the named insured.

On May 16, 2022, the plaintiff's common-law spouse, Debbie Boyd, and their adult daughter, Hannah Hartenfels ("Hannah"), were killed in a motor vehicle accident in Choctaw County, Alabama.[1] The 2017 Toyota Camry listed on the Policy was not involved—Boyd was driving another vehicle, with Hannah as her passenger. At the time of the accident, Hartenfels alleges that Boyd and Hannah were both residents of his household in Pennsylvania, while LM General alleges that they were both residents of Choctaw County, Alabama, and thus not residents of the same household as Hartenfels.

Hartenfels was subsequently granted letters of administration for the estates of both Boyd and Hannah in Pike County, Pennsylvania. He then submitted claims to LM General for UIM benefits under the Policy,

---

[1] The parties dispute whether Hartenfels and Boyd were married at the time of the motor vehicle accident. Hartenfels alleges in his counterclaim that Boyd was his common law spouse. LM General simply alleges on information and belief that they were not married.

both individually and as administrator for Boyd's and Hannah's estates.

LM General filed its complaint for declaratory judgment against the defendant, Robert Hartenfels, in his individual capacity and in his capacity as administrator of the estates of Boyd and Hannah. LM General seeks a declaration that Hartenfels, both individually and as administrator of Boyd's and Hannah's estates, is not entitled to recover UIM benefits under the Policy.

Hartenfels filed an answer with counterclaims. Proceeding both individually and as administrator of the two estates, he has asserted three claims: (1) a contractual claim for UIM benefits under the Policy; (2) a contractual bad faith claim based on LM General's refusal to pay UIM benefits and its conduct in investigating and handling the claims; and (3) a statutory bad faith claim based on the same conduct.

LM General now moves to bifurcate discovery and trial in this case, seeking to resolve the insurance coverage issue before conducting discovery on Hartenfels's bad faith claims. Under the federal rules, a court has broad discretion in determining whether to bifurcate claims or issues for discovery or trial. *See* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a

separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."); *see also Barr Laboratories, Inc. v. Abbott Laboratories*, 978 F.2d 98, 105 (3d Cir. 1992); *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978); *Griffith v. Allstate Ins. Co.*, 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014).

While bifurcation is "encouraged where experience has demonstrated its worth," we are also counseled that "separation of issues for trial is not to be routinely ordered." *Lis*, 90 F.2d at 824 (quoting Fed. R. Civ. P. 42(b) advisory committee note (1966)). In determining whether bifurcation is appropriate, the court must consider four factors: "(1) whether the issues are significantly different from each other; (2) whether they require separate witnesses and documents; (3) whether the nonmoving party would be prejudiced by bifurcation; and (4) whether the moving party would be prejudiced if bifurcation is not granted." *Griffith*, 90 F. Supp. 3d at 346 (brackets omitted). It is the moving party who bears the burden of demonstrating that bifurcation is appropriate. *See id.*; *Reading Tube Corp. v. Emps. Ins. of Wausau*, 944 F. Supp. 398, 404 (E.D. Pa. 1996).

First, although the ultimate legal issues may be clearly distinct,

there is considerable factual overlap in the coverage and bad faith issues. Factual questions regarding the marital status of Hartenfels and Boyd and regarding the place of residence of Boyd and Hannah are central to—if not entirely dispositive of—both the coverage and bad faith issues.

Second, although the bad faith claims may require some additional testimony and evidence regarding the investigation and handling of the plaintiff's insurance claims, the central questions relating to the marital status and residence issues appear likely to involve the very same witnesses and documents to resolve in both proposed phases of litigation. LM General argues that bifurcation would promote judicial efficiency if it prevails in the first round on the coverage issue, obviating the need to proceed with a second round of discovery, dispositive motions, and trial on the defendant's bad faith claims. But that, of course, presupposes the insurer will prevail on the coverage issue. Disregarding such speculation, we note that "[b]ifurcation would essentially double the life of this action requiring a second discovery period, more dispositive motions, more pre-trial motions, and a completely separate second trial." *Griffiths*, 90 F. Supp. 3d at 347. While in some cases that second round of litigation may be considerably more burdensome than the first round, making

bifurcation advantageous, the facts presented in this case do not suggest such an asymmetry between the relatively narrow coverage and bad faith issues at stake in this case. Under the circumstances presented, we find bifurcation in this case more likely to waste judicial resources and cause inconvenience.

Third, we find that denial of bifurcation would cause no undue prejudice to LM General. LM General suggests obliquely that discovery into the bad faith claims could implicate the disclosure of information or materials shielded by attorney-client privilege or work product protection.[2] But, as this court has previously observed, "institution of a bad faith claim does not automatically waive attorney-client privilege or the work product doctrine." *Griffith*, 90 F. Supp. 3d at 347. While some attorney-client communications or litigation work product that is not relevant to the issue of coverage might at the same time be relevant to the bad faith claims, any such information or documents subject to

---

[2] LM General does not expressly state that discovery into the bad faith issue here may implicate privileged or protected information or documents, but it cites with little elaboration to a discussion of prejudice in *McFarland, LP v. Harford Mutual Insurance Cos.*, No. 18-CV-1664, 2019 WL 3336982, at *3 (M.D. Pa. July 25, 2019), that is exclusively concerned with attorney-client privilege and work product doctrine.

attorney-client privilege or work product protection may still be withheld from discovery under the federal rules. *See, e.g.*, Fed. R. Civ. P. 26(b)(1) (limiting the scope of discovery to *nonprivileged* matter); Fed. R. Civ. P. 26(b)(5) (laying out procedures for withholding privileged or protected information from disclosure). LM General also suggests that the presentation of testimony or evidence on the bad faith issue might cause confusion for a jury also considering the coverage issue at the same time. But LM General's concerns about jury confusion are premature at this early stage of the litigation—the pleadings remain open,[3] discovery remains open, and dispositive motions have not yet been filed or considered.[4]

Fourth, we find that granting bifurcation at this early stage, foreclosing discovery or litigation of the bad faith issue until after fully resolving the coverage issue, would cause undue prejudice to the defendant, requiring him to incur the expense of conducting an extra

---

[3] LM General has not yet filed its answer to the defendant's counterclaims. It has moved for partial dismissal instead.

[4] We note that denial of the instant motion to bifurcate is without prejudice to an appropriately supported motion to bifurcate the trial itself, should circumstances justify doing so at the time of trial. Moreover, we note that the issue of potential jury confusion often may be remedied by well-crafted jury instructions.

round of discovery directed at many of the very same witnesses and sources of documents, both party and non-party.

Having weighed these considerations, we find that bifurcation is not appropriate in this case. *See generally Eizen Fineburg & McCarthy, P.C. v. Ironshore Specialty Ins. Co.*, 319 F.R.D. 209, 212 & n.4 (E.D. Pa. 2017) ("A sizeable majority of the federal district courts in Pennsylvania have refused to stay bad faith claims against insurers until the underlying coverage claims can be resolved.") (internal quotation marks omitted).

Accordingly, the plaintiff's motion to bifurcate (Doc. 9) will be denied.

An appropriate order follows.

Dated: July 19, 2024         *s/Joseph F. Saporito, Jr.*
                             JOSEPH F. SAPORITO, JR.
                             Chief United States Magistrate Judge